# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.C. II**

**No. 20-0060** (Harrison County 19-JA-124-1)

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.C. Sr., by counsel Dean Morgan, appeals the Circuit Court of Harrison County's December 4, 2019, order terminating his parental rights to D.C. II.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Allison S. McClure, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) adjudicating him as an abusing parent, (2) denying his request for a post-adjudicatory improvement period, (3) finding the conditions of abuse and neglect could not be corrected in the near future, and (4) terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner and the mother had a history of involvement with Child Protective Services ("CPS") in West Virginia and Pennsylvania. The DHHR alleged a history of domestic violence and substance abuse and a pending investigation for child endangerment in Pennsylvania. The petition further contained allegations of inadequate supervision of D.C. II, who was less than one year old at the time,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

including multiple instances where petitioner and the mother left the child unattended or with family members who were unequipped to care for the infant child. Specifically, the DHHR alleged that in at least one instance, the mother had two unknown individuals drop off the child at the maternal aunt's residence while the child was experiencing medical issues. The DHHR further alleged that the aunt disclosed that petitioner and the mother fought constantly and that her attempts to contact petitioner to pick up the child were unsuccessful. According to the DHHR, a CPS worker attempted to contact petitioner on several occasions regarding the child and had sporadic success. As a result, the DHHR alleged that petitioner and the mother failed to adequately supervise the child; subjected him to unsafe conditions, including drug use; and ultimately abandoned the child. Thereafter, petitioner waived his preliminary hearing.

The circuit court held a series of adjudicatory hearings beginning in August of 2019. At the initial hearing, the child's maternal aunt, grandmother, a custodian of the mother's other children, and a DHHR worker testified. The aunt testified to many of the allegations in the petition, including that she was left alone with the infant child on at least one occasion without any communication from petitioner or the mother. The aunt further testified that the infant child was suffering from severe diarrhea and diaper rash, but she did not have consent to provide the child with medical treatment or have the child's medical card. The grandmother testified that she contacted law enforcement to perform a welfare check on the child. She further testified that she could not contact petitioner or the mother because she did not have their contact information. R.W., the custodian for the mother's other children, testified that there was domestic violence between petitioner and the mother. R.W. further testified that petitioner contacted her on at least one occasion to report that the mother was a "meth head" and that he had threatened the mother that she could lose custody of the child due to her drug use. After hearing testimony, the hearing was continued, over petitioner's objection, due to a scheduling conflict with the DHHR's counsel. In September of 2019, the adjudicatory hearing was continued again because petitioner was involved in a motor vehicle accident and unable to attend. Later that month, the circuit court continued the adjudicatory hearing again because the mother was absent due to a medical condition. Petitioner moved the circuit court to dismiss the case against him based on the delay in the proceedings. The circuit court denied his motion, noting that some of the delay was to accommodate petitioner's absence. Additionally, the court ordered petitioner to participate in a drug screen following the hearing, wherein he tested positive for marijuana. Finally, in October of 2019, the circuit court concluded the adjudicatory hearing. Petitioner did not appear in person for the continued hearing but was represented by counsel. Based upon the testimony and evidence presented, the circuit court adjudicated petitioner as an abusing and neglecting parent.

In November of 2019, the circuit court held a dispositional hearing. Petitioner did not attend the hearing in person but was represented by counsel. Counsel proffered to the court that he spoke to petitioner "last week and [he] was aware of today's hearing." Counsel also admitted that he had not heard from petitioner since their previous conversation and had attempted to call him that day without success. The court then instructed the bailiff to call petitioner's name three times outside the courtroom, but there was no response. Counsel moved for a continuance to attempt to contact petitioner, which the court denied. After proceeding with the hearing, a DHHR worker testified that, prior to a court hearing in September of 2019, she had attempted to call petitioner

with the number he provided but never heard back. After that court hearing, the DHHR worker testified that she was unable to set up services with petitioner because he responded that he "did not want to hear anything [she] had to say." The worker went on to testify that petitioner then "stated some choice words and commented with him living out of state, he would not be doing that." The DHHR worker stated that she informed petitioner that if he changed his mind and wished to participate in services, he should contact the DHHR. Finally, the worker testified that petitioner never contacted her after that interaction. In addition to the caseworker's testimony, the DHHR moved to admit petitioner's positive drug screen. As a result of the testimony, the DHHR moved for the termination of petitioner's parental rights due to his refusal to comply with services.

At the conclusion of the hearing, petitioner moved for an improvement period or, alternatively, an order holding the disposition in abeyance. The circuit court denied petitioner's motion, finding there was nothing to indicate he would participate in an improvement period based upon his failure to appear for hearings[2] and his refusal to participate in services offered to him prior to the dispositional hearing. In light of the evidence presented at the dispositional hearing, the circuit court found that petitioner also failed to participate in random drug screenings—missing approximately seven screens—and tested positive for marijuana on one occasion. Additionally, as a result of refusing to participate in services, petitioner did not attend any life skills and parenting classes or visit with the child. Indeed, testimony established that petitioner had not seen the child during the preceding four months. Based upon these findings, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the child to terminate petitioner's parental rights.[3] The circuit court entered an order reflecting its decision on December 4, 2019. Petitioner appeals from this order.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[2]Petitioner failed to appear for hearings held on September 11, 2019; October 9, 2019; and November 12, 2019. While petitioner was involved in a motor vehicle accident on September 11, 2019, it is unclear why petitioner failed to appear for the final two hearings.

[3]The mother's parental rights were also terminated during the proceedings below. According to the parties, the permanency plan for the child is adoption.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. According to petitioner, it was the mother who engaged in abusive and/or neglectful conduct and the only allegation against him was, in essence, a failure to act. Specifically, he argues that the mother failed to take appropriate parental action; therefore, it was error for the circuit court to find that his failure or inability to provide for the child constituted abuse or neglect. As such, petitioner argues there was insufficient evidence to adjudicate him as an abusing parent of D.C. II. We disagree.

We have previously held as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Additionally, pursuant to West Virginia Code § 49-1-201, a neglected child means a child whose

> physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent of D.C. II. Although petitioner addresses the findings against the mother, he completely fails to address the evidence of his neglectful behavior and failure to protect the child. At various points in the proceedings, a DHHR worker, Pennsylvania law enforcement officer, the custodian for the mother's other children, the child's maternal aunt, and the child's grandmother testified as to petitioner's actions. Specifically, on at least one occasion, petitioner transported the mother and child—who was just two months old at the time—to the residence of the mother's friend in West Virginia, despite knowledge that the mother had abandoned the child on a porch in the middle of the night just days earlier. Further, petitioner failed to take custody of the child from the mother despite his knowledge that the mother was discussing using

methamphetamine with her friend. In fact, the mother eventually requested that petitioner retrieve the child, but he failed to respond. Additionally, petitioner failed to contact the DHHR or respond to a caseworker regarding the safety and welfare of the child for nearly twenty-four hours after the DHHR was granted emergency custody. Finally, petitioner failed to participate in the adjudicatory hearing and present any testimony in support of his position. *See* Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S*., 197 W. Va. 489, 475 S.E.2d 865 (1996) ("[W]here the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability."). While petitioner attempts to minimize his neglectful conduct as nothing more than a failure to act while the mother subjected the child to abuse and/or neglect, he ignores the fact that such failure to provide the child with appropriate supervision constitutes neglect under the definition set forth above. Therefore, we find no error in the circuit court's adjudication of petitioner as neglecting the child.

Next, petitioner argues that the circuit court erred in denying him a post-adjudicatory improvement period because he had reported the mother's abuse and neglect to the police, acquired housing independent from the mother, and obtained regular employment. Petitioner argues that these efforts demonstrate that he had substantially corrected the conditions of abuse and neglect on his own, without assistance from the DHHR. We find petitioner's arguments unavailing.

Although petitioner argues that he proved his likelihood to participate in an improvement period by reporting the mother's neglectful conduct to the police and obtaining housing and employment, these actions are the extent of petitioner's attempts to remedy the conditions of abuse and neglect. Most importantly, petitioner's argument on appeal entirely fails to address his ongoing neglect of the child and his failure to take any steps to remedy these issues. Petitioner does not dispute that he failed to participate in multiple required drug screens, attend parenting or life skills classes, or even appear in person for multiple hearings. Further, petitioner does not deny that he was offered services or dispute that he told a DHHR caseworker that he "did not want to hear anything [the caseworker] had to say" when she attempted to provide petitioner with services. However, instead of addressing any of these deficiencies, petitioner makes several contradictory arguments about his lack of participation in services. Petitioner first argues that he never received a referral to participate in services, including supervised visitation or parenting classes. He then sets forth a bare assertion that "financial constraints" prevented his full participation in the lower court proceedings. Further, petitioner contends that he could have participated in services if they were available to him in Pennsylvania, where he lives, rather than in West Virginia. Finally, petitioner argues that he had already substantially corrected the conditions of abuse and neglect on his own. Regardless of his rationale, we note that petitioner bore the responsibility of completing the goals of his family case plan, and the record shows that he took almost no steps to achieve these goals.

Despite the overwhelming evidence of petitioner's noncompliance, he nonetheless argues that he would have fully participated in a post-adjudicatory improvement period. West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the

[parent] is likely to fully participate in the improvement period." We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Here, the record clearly supports the circuit court's denial of a post-adjudicatory improvement period as petitioner failed to comply with offered services, communicate with the DHHR and service providers, or fully participate in the proceedings below. Accordingly, we find no error.

Moreover, based on the evidence of petitioner's noncompliance and his failure to attend many of his court hearings, participate in drug screens, or attend any parenting or life skills classes, the circuit court found that petitioner failed to follow through with the DHHR's rehabilitative services. This constitutes a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(d)(3). On appeal, petitioner asserts that the circuit court's decision to terminate his parental rights was improper when he was making substantial progress on his own toward reunification. We disagree and find that the circuit court's order is specific and enumerates several areas where petitioner failed to make progress as the basis for the termination of his parental rights. The circuit court's findings are based on substantial evidence that petitioner failed to avail himself of the services offered. Moreover, the circuit court found that termination of petitioner's parental rights was in the child's best interests. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal. As such, termination of petitioner's parental rights was appropriate.

Lastly, because permanency has not yet been achieved, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress

and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 4, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison